**Mr. David LENNITT Jr., Petitioner**

v.

**COMMONWEALTH of Pennsylvania DEPARTMENT OF CORRECTIONS (inmate records division) and David DiGuGlielmo, Superintendent, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 2008.
Decided Dec. 23, 2008.
Rehearing and Reargument En Banc Denied Jan. 21, 2009.

No appearance entered on behalf of petitioner.

Debra Sue Rand, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court for disposition is a preliminary objection in the nature of a demurrer filed by the Department of Corrections (Department) and David DiGuGlielmo (DiGuGlielmo), Superintendent of the State Correctional Institution at Graterford (SCI–Graterford) (collectively, Respondents), in response to a petition for review in the nature of mandamus filed, pro se, by David Lennitt Jr. (Lennitt) in our original jurisdiction.[1] For the reasons discussed herein, we sustain Respondents' preliminary objection and dismiss Lennitt's petition for review.

Lennitt is an inmate at SCI–Graterford. In his petition for review, Lennitt avers the following. On April 26, 2007, he and his fiancée met with James Davis, a counselor at SCI–Graterford, to discuss the procedures for getting married in prison. (Petition for Review ¶ 4.) On October 9 or 10, 2007, Mr. Davis sent Lennitt a letter advising him that his classification summary, which was dated July 23, 1991, indicated that he was already married. (Petition for Review ¶ 5.) Lennitt was further advised that, in order to be permitted to marry his fiancée, he would need to present a divorce decree showing that he was no longer married. However, no divorce decree exists "because there never ... was a marriage." (Petition for Review ¶ 6.) Lennitt attempted to show that he was not married by performing a search using the USA People Search website; however, this did not satisfy the Department. (Petition for Review ¶ 7.) Lennitt and his fiancée tried to resolve the situation by corresponding with DiGuGlielmo and Jeffrey Beard, Secretary of the Department, but to no avail. (Petition for Review ¶¶ 8–9.)

Lennitt claims, in his petition for review, that there is "erroneous data residing in his inmate files that aver that he is married, and that [such data is] not substantiated by an[y] documents in support of [the] same and prevents [him] from the liberty interest of getting married." (Petition for Review ¶ 2.) Lennitt also claims that, "upon [his] arrival to [SCI–Graterford,] he somehow was deemed married" and that "any marriage was of a [common-law] nature if any." (Petition for Review ¶ 3.) Lennitt further claims that Governor Edward G. Rendell "abolished common law type marriages as of Jan[uary] 1, 2005. (Petition for Review ¶ 11.)" Finally, Len-

1. The initiating document filed by Lennitt is titled "Petition for Writ of Mandamus and/or extraordinary relief." By order dated April 22, 2008, this Court granted Lennitt permission to proceed *in forma pauperis* and directed that the initiating document be treated as a petition for review addressed to this Court's original jurisdiction.

nitt claims that "the allegation that he is married is based upon no marriage license [and] that the [Respondents] can not themselves . . . offer any documents to substantiate [their] claim except a verbal notation made upon [Lennitt's] arrival to prison." (Petition for Review ¶ 11.) Thus, Lennitt requests that this Court compel Respondents to: (1) correct his classification summary to reflect that he is not married; and (2) "allow[ ] him to marry his fiancé[e]." (Petition for Review at 3.)

In their preliminary objection, Respondents aver that Lennitt failed to sufficiently set forth a cause of action in mandamus. Respondents acknowledge that Lennitt is correct in averring that they have not given him permission to marry his fiancée because his classification summary, dated July 23, 1991, shows that he is already married.[2] Respondents aver that the information contained in Lennitt's classification summary, including his marital status, is based largely on information that Lennitt self-reported to the Department. Respondents contend that because Lennitt previously self-reported that he was married, it is his burden to prove that he is not married, and he cannot meet his burden "merely by alleging now that what he self-reported in 1991 may have been inaccurate." (Respondents' Br. at 7.)[3] Respondents further contend that Lennitt's allegation that, if he was part of a common-

law marriage, he is no longer married because Governor Rendell abolished common-law marriage as of January 1, 2005, fails. Respondents assert that the applicable statutory provision setting forth the current state of the law regarding common-law marriage in Pennsylvania is Section 1103 of the Domestic Relations Code, 23 Pa.C.S. § 1103. Section 1103 provides that "[n]o common-law marriage contracted after January 1, 2005, shall be valid," but that "[n]othing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid." 23 Pa.C.S. § 1103. Thus, according to Respondents, Lennitt is required to come forth with documentation to prove that his common-law marriage was legally dissolved, but since he acknowledges that he has no such documentation, he has failed to set forth allegations establishing a right to mandamus relief. Additionally, Respondents contend that Lennitt is not entitled to mandamus relief because he has another available remedy in that he can adjudicate the status of his common-law marriage by using the procedures set forth in Section 3306 of the Divorce Code, 23 Pa.C.S. § 3306, which allows either party to a purported marriage to obtain a declaratory judgment regarding the validity or invalidity of the marriage.

---

**2.** Respondents further acknowledge that, pursuant to the U.S. Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), inmates have a constitutional right to marry and that the Department has a policy, DC–ADM 821, which specifically authorizes inmates to marry. However, Respondents assert that they are concerned about "allowing an inmate who previously self-reported that he is married to marry again without first being certain that his marriage is legally dissolved." (Respondents' Br. at 8.) "Respondents do not want to assist [Lennitt in] commit[ing] a possible crime-bigamy." (Respondents' Br. at 8.)

**3.** We note that only Respondents have filed a brief in this matter. Lennitt's brief was originally due on July 28, 2008; however, Lennitt did not file a brief before the filing deadline. On August 11, 2008, this Court issued an order directing Lennitt to file a brief within 14 days of that order and advising him that his failure to do so would result in him being precluded from later filing a brief. Lennitt failed to comply with this Court's order, and by order dated September 4, 2008, this Court determined that Lennitt was precluded from filing a brief.

In considering preliminary objections in the nature of a demurer, this Court has stated:

> Preliminary objections in the nature of a demurrer are deemed to admit all well-pleaded material facts and any inferences reasonably deduced therefrom, but not the complaint's legal conclusions and averments. The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the complaint shows that the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled. A demurrer should be sustained only in cases that are clear and free from doubt and only where it appears with certainty that the law permits no recovery under the allegations pleaded.

*Danysh v. Department of Corrections*, 845 A.2d 260, 262–63 (Pa.Cmwlth.2004) (citations omitted).

■■■ "Mandamus is an extraordinary writ that is available only to compel a ministerial duty where there exists: 1) a clear legal right in the plaintiff; 2) a corresponding duty in the defendant; and 3) the lack of any other adequate and appropriate remedy." *Banks v. Department of Corrections*, 759 A.2d 432, 433 (Pa.Cmwlth.2000). A mandamus action "is not proper to establish legal rights, but is only appropriate to enforce those rights which have already been established." *Feigley v. Department of Corrections*, 731 A.2d 220, 222 (Pa. Cmwlth.1999).

■■■ After carefully considering the facts alleged by Lennitt, and the arguments presented by Respondents in support of their demurer, we conclude that Lennitt has failed to sufficiently set forth a cause of action in mandamus. Lennitt acknowledges in his allegations that Respondents are not permitting him to marry his fiancée because of information contained in his classification summary, which indicates that he is already married. (*See* Petition for Review ¶¶ 5–6.) It can also be inferred from Lennitt's allegations that he acknowledges that the information contained in his classification summary is based on a verbal statement that he provided to the Department upon his arrival to SCI–Graterford.[4] (Petition for Review ¶ 11.) Importantly, Lennitt neither alleges that he did not make such a statement nor that the statement he provided was inaccurately transcribed on his classification summary. Instead, as Respondents point out, Lennitt merely alleges now that what he self-reported in 1991 was inaccurate and should not have been believed by the Department without being verified.[5] However, such

---

**4.** Lennitt also filed with this Court a document titled "Petitioner's opposition and counter objections to respondents' [demurrer] and preliminary objection" (Lennitt's Opposition and Counter Objections). In this document, Lennitt avers that "[R]espondents practi[c]e of accepting anything an unclassified inmate states as true and correct is not to be later used as a consequence of making the statement[, and] at some point and time[,] the data must be authenticated." (Lennitt's Opposition and Counter Objections ¶ 5.) Lennitt also acknowledges that he did "hav[e] a girlfriend" and that they "call[ed] each other husband and wife." (Lennitt's Opposition and Counter Objections ¶ 6.) Lennitt further asserts that his "alleg[ed] common-law wife's ... actual whereabouts as of this date and as far back as two years prior to this situation is unknown." (Lennitt's Opposition and Counter Objections ¶ 7.)

**5.** Lennitt does not reference any authority that requires the Department to authenticate the information that is provided by inmates upon arrival at a state correctional institutional. We believe that such a requirement would clearly place an unreasonable burden on the Department. Thus, inmates must assume responsibility for providing accurate information to the Department. Inmates cannot reasonably expect the Department to

allegation, without more, is insufficient to establish a clear right to mandamus relief.

Moreover, while Lennitt alleges that any marriage he entered into was of a common-law nature and that such marriage no longer exists because common-law marriage was abolished by Governor Rendell as of January 1, 2005, this allegation fails. As Respondents correctly assert, Section 1103 of the Domestic Relations Code is the applicable statutory provision which sets forth the current state of the law regarding common-law marriage in Pennsylvania, and the plain language of that Section makes clear that it does not apply retroactively "to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid." 23 Pa.C.S. § 1103. Thus, if Lennitt was a party to a valid common-law marriage[6] prior to January 1, 2005, such marriage remains valid, and Lennitt would need to obtain a divorcee decree in order to terminate that marriage. *See* 3323(a) of the Divorce Code, 23 Pa.C.S. § 3323. As Respondents correctly note, however, Lennitt has acknowledged that no divorce decree exists. Therefore, Lennitt's allegations are once again insufficient to establish a clear right to mandamus relief.

Furthermore, as Respondents contend, Lennitt does appear to have another adequate remedy that he may pursue, which is to adjudicate the status of his purported common-law marriage using the procedures set forth in Section 3306 of the Divorce Code. Section 3306 provides that:

> When the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or invalid by decree of court and, unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned.

23 Pa.C.S. § 3306. Using the procedures set forth in Section 3306, Lennitt may obtain a declaratory judgment indicating that his purported marriage was invalid. If Lennitt obtains such a judgment, Lennitt may present the same to Respondents, and Respondents would be required to change Lennitt's classification summary to reflect that he is not married. Provided that Lennitt complies with all other applicable procedures imposed by the Department, Lennitt would then be permitted to marry his fiancée. Therefore, Lennitt has another adequate remedy that he may pursue to obtain the relief that he desires, and he is precluded from obtaining mandamus relief.[7]

Accordingly, for the foregoing reasons, Respondents' preliminary objection is sus-

overlook or change information that they themselves provided without having to produce sufficient documentation to support the reason for why the information that they previously provided was inaccurate or has changed.

6. Our Supreme Court, in *Staudenmayer v. Staudenmayer*, 552 Pa. 253, 261–62, 714 A.2d 1016, 1020 (1998), explained that a common-law marriage is "created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by that." *Id.* at 261–62, 714 A.2d at 1016. The Supreme Court also explained that common-law mar-

riage may be proven by the parties' testimony regarding the formation of the marriage contract. *Id.* at 262–64, 714 A.2d at 1020–22. The Supreme Court further explained that, where the parties are unavailable to testify regarding the formation of the marriage contract, a rebuttable presumption of common-law marriage arises upon proof of constant cohabitation and reputation of marriage. *Id.*

7. We also note that Respondents have not absolutely denied Lennitt and his fiancée permission to get married. Instead, because Lennitt had previously self-reported to the Department that he was married, Respondents conditioned Lennitt receiving approval

tained, and Lennitt's petition for review is dismissed.

### ORDER

**NOW,** December 23, 2008, the preliminary objection filed by the Department of Corrections and David DiGuGlielmo, Superintendent of the State Correctional Institution at Graterford, in the above-captioned matter is hereby sustained, and the petition for review filed by David Lennitt Jr. is dismissed.

to marry his fiancée on him providing documentation to Respondents to substantiate that his initial statement was incorrect or that his purported marriage no longer exists. While Lennitt did not initially provide any satisfactory documentation to Respondents, he may still do so. Respondents previously indicated that they would accept documentation such as a divorce decree, Internal Revenue Service tax forms for the years in question, or a notarized statement from Lennitt's ex-girlfriend indicating that they were never married. (Letter from Heather Yates, Special Assistant to the Secretary, to Lennitt's fiancée, Mikki Kitner, February 11, 2008.) However, this was not an inclusive list. Other documents that Lennitt could produce to substantiate that he is not married include employment forms, insurance forms, or bank records from the years in question on which he was required to disclose information regarding his marital status.

It is also worth noting that Lennitt filed with the Court another document in which he claims not to be a resident of Pennsylvania and seems to suggest that he is a resident of New Jersey. However, it is unclear whether Lennitt was residing in New Jersey prior to his incarceration, or during the period when his purported common-law marriage was created. Pursuant to the applicable laws of New Jersey, common law marriages entered into on or after December 1, 1939, are invalid. N.J. Stat. § 37:1–10. Thus, Lennitt could also establish that he is not married by proving that he and his ex-girlfriend resided in New Jersey during the period when their purported common-law marriage was created.