**Elias NIEVES, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, and Pennsylvania Department of Corrections and Department of Corrections Community Corrections Center, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 29, 2010.

Decided April 28, 2010.

Elias Nieves, petitioner, pro se.

John C. Manning, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent, Pennsylvania Board of Probation and Parole.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Elias Nieves (Nieves) has filed a petition for review (Petition) in this court's original jurisdiction against the Pennsylvania Board of Probation and Parole (Board).[1] Nieves and the Board each seek summary relief. We grant summary relief to the Board and deny summary relief to Nieves.

Nieves is a convicted sex offender incarcerated at the State Correctional Institution in Coal Township (SCI–Coal). On May 30, 2008, the Board issued a decision to parole Nieves to a Community Corrections Center (CCC) for a minimum of nine months upon his completion of a sex offender program. (Petition, ex. B.) As a result, the Department of Corrections (Department) placed Nieves on a waiting list for one of fifty beds reserved for sex offenders in the Department's CCCs.

On February 2, 2009, following the adoption of new procedures for the release of violent offenders, the Board modified its decision, stating that Nieves would be released on parole "upon completion of [a] sex offender program to a specialized CCC with violence prevention programming. . . ." (Petition, ex. C.) As a result of this change, the Department placed Nieves on a waiting list for one of ten beds reserved for violent sex offenders in the Department's specialized CCCs.

On March 5, 2009, Nieves filed his Petition with this court, asserting that the Board informed Nieves that he will need a home plan before he can receive a CCC bed date;[2] however, the Board rejected all of his home plan proposals because the residences were too close to schools. Nieves points out that: (1) section 9798 of Megan's Law[3] does not prohibit sexually violent predators from living close to schools; (2) section 9798 requires only that notice be given to schools when sexually violent predators live nearby; and (3) although Nieves is a sex offender, there has been no determination that he is a sexually violent predator under Megan's Law.[4] Nieves also asserts that, even though the Board rejected his home plan proposals, 61 P.S. § 315[5] states that a prisoner who has served his minimum sentence cannot be

---

1. In *Nieves v. Pennsylvania Board of Probation and Parole*, 983 A.2d 236 (Pa.Cmwlth.2009), this court dismissed the Petition with respect to the Pennsylvania Department of Corrections and the Department of Corrections Community Corrections Center.

2. The Board may postpone the effective date of parole until a satisfactory plan is arranged for the "parolee" and approved by the Board. 37 Pa.Code § 63.1(d). Nieves, however, argues that the Board's requirement that he reside in a CCC upon release on parole constitutes an approved plan. We disagree. The Board has required only that Nieves temporarily reside in the CCC; thus, the Board may postpone the effective date of his parole pending an approved plan for the time following the release of Nieves from the CCC.

Nieves also argues that 37 Pa.Code § 63.1(d) does not apply to him because he has not yet been released on parole and, thus,

is not a "parolee." However, the regulation pertains to the Board's power to postpone the effective date of parole; thus, the word "parolee" in the regulation clearly refers to someone like Nieves who has been granted parole, but has not yet been released on parole.

3. 42 Pa.C.S. § 9798.

4. Section 9792 of Megan's Law defines "sexually violent predator" as a person convicted of certain sexually violent offenses who is determined to be a sexually violent predator due to a mental abnormality or personality disorder making the person likely to engage in predatory sexually violent offenses. 42 Pa.C.S. § 9792.

5. Nieves is referring to section 1 of the Act of May 28, 1913, P.L. 363, formerly 61 P.S. § 315, repealed by section 11(b) of the Act of August 11, 2009, P.L. 147.

detained based on his inability to procure a satisfactory sponsor.

Nieves seeks an order in mandamus compelling the Board to issue an order releasing him on parole. Nieves argues that the Board has a duty to do so because: (1) 61 P.S. § 315 requires it; (2) the Board violated his *ex post facto* rights when it modified its parole decision on February 2, 2009, increasing the time he must spend in prison waiting for a CCC bed date; and (3) the Board violated his substantive due process rights by arbitrarily modifying its parole decision after deciding in its May 30, 2008, decision that his release on parole would pose no risk to society.

■ The Board filed preliminary objections to the Petition, but later withdrew them. The Board subsequently filed an answer to the Petition with new matter. In its new matter, the Board alleged the following undisputed facts.[6]

In July 1987, Nieves raped a twenty-five-year-old woman at knifepoint in her home. Nine days later, Nieves raped a twelve-year-old girl at knifepoint. The following year Nieves was convicted of, and sentenced for, rape, statutory rape, indecent assault, involuntary deviate sexual intercourse, corruption of the morals of a minor, terroristic threats and recklessly endangering another person. He received an aggregated sentence of sixteen years and eleven months to forty years.[7]

On May 30, 2008, the Board issued a decision to grant Nieves parole to a CCC on the condition that he completes a sex offender program.[8] The Board's decision stated that Nieves was required to have an approved home plan prior to his release from the CCC residency. The Board then requested a CCC bed date from the Department. Nieves submitted five home plans to the Board, but the Board rejected them pursuant to a Board policy stating that a sex offender's home plan may not be within 1,000 feet of a school, day care center or playground when one of the sex offender's victims was under eighteen years of age at the time of the offense.[9]

On February 2, 2009, the Board amended its conditional grant of parole to require

6. Although Nieves does not dispute the material facts in the Board's new matter, Nieves argues that the Board waived its new matter under Pa. R.C.P. No. 1032(a) because the new matter raises a defense that the Board should have raised in preliminary objections. We disagree. Pa. R.C.P. No. 1032(a) states that a party "waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except ... the defense of failure to state a claim upon which relief can be granted...." In its new matter, the Board maintains that Nieves fails to state a claim upon which relief can be granted; as indicated, such an objection is not waived under Pa. R.C.P. No. 1032(a).

7. We note that Nieves was convicted and sentenced prior to the enactment of Megan's Law.

8. The prison's psychological staff had recommended that Nieves be paroled to a CCC.

9. Nieves proposed a home plan with his sister in Reading, but the Board rejected it on June 20, 2008, because there are three schools and/or day care centers within 1,000 feet of the residence. Nieves proposed a home plan with his nephew in Lancaster, but the Board rejected it on July 24, 2008, because there are two schools and a day care center within one or two blocks of the residence. Nieves proposed a home plan with a sister who lived in Lancaster, but the Board rejected it on August 18, 2008, because two minor children live in the home. Nieves proposed a home plan with another sister who lived in Lancaster, but the Board rejected it on October 8, 2008, because there are three day care centers and an elementary school within one or two blocks of the residence. Nieves proposed a home plan with another nephew, but the Board rejected it on May 13, 2009, because the nephew's community does not allow sex offenders to live on the property.

Nieves to spend time at a specialized CCC with violence prevention programming after Nieves completes a sex offender program. Nieves has completed a sex offender program, and the Board is now waiting for a specialized CCC bed date from the Department before the Board actually releases Nieves on parole.

In its new matter, the Board argues that mandamus does not lie to compel the Board to issue a release order because: (1) the legislature has repealed 61 P.S. § 315, and, thus, the provision gives Nieves no clear right to immediate release on parole; (2) the Board's modification of its parole decision to require Nieves to spend time at a specialized CCC is not a law and, thus, does not violate his *ex post facto* rights; and (3) the Board's modification of its parole decision does not violate the due process rights of Nieves because Nieves has no liberty interest in parole until he is actually released on parole. Nieves filed a reply to the new matter, rejecting the Board's arguments. The Board and Nieves now seek summary relief.

 Mandamus is an extraordinary writ available to compel performance of a ministerial duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant and the lack of any other adequate and appropriate remedy.

*Lennitt v. Department of Corrections*, 964 A.2d 37 (Pa.Cmwlth.2008).

## I. 61 P.S. § 315

 Nieves argues that, although the Board has not approved a home plan and the Department has not provided a specialized CCC bed date, the Board has a duty under 61 P.S. § 315 to issue an order releasing him on parole. The Board counters that 61 P.S. § 315 is inconsistent with the Act known as the Parole Act,[10] and section 35 of the Parole Act repealed all parts of acts that were inconsistent with the Parole Act. We agree with the Board.

The provision at 61 P.S. § 315 provided: [N]o prisoner, who has been sentenced to a minimum and maximum imprisonment, after such prisoner has served the minimum sentence, shall be detained in any penal institution because of the inability of such prisoner to procure a sponsor who shall be satisfactory to the board of inspectors or trustees of such penal institution. . . .

However, section 21 of the Parole Act, formerly 61 P.S. § 331.21, gave the Board power and discretion to release a prisoner on parole after expiration of the prisoner's minimum term depending on the considerations set forth in section 19 of the Parole Act, formerly 61 P.S. § 331.19.[11] To the

---

**10.** Act of August 6, 1941, P.L. 861, *as amended*, formerly 61 P.S. §§ 331.1–331.34a, repealed by section 11(b) of the Act of August 11, 2009, P.L. 147. A similar act to the Parole Act is now found in 61 Pa.C.S. §§ 6101–6153. We note that Nieves filed his Petition prior to the repeal of the Parole Act and that, when substantive rights are involved, the applicable law must be that which was in effect at the time the cause of action arose. *Bell v. Koppers Co., Inc.*, 481 Pa. 454, 392 A.2d 1380 (1978). Thus, to the extent this matter involves the substantive rights of Nieves, we apply the Parole Act.

**11.** Nieves points out that the legislature explicitly repealed 61 P.S. § 315 on August 11, 2009, which was after Nieves filed his Petition with this court. Nieves argues that this more recent repeal shows that the legislature did not repeal it previously. We disagree. The legislature's implicit repeal of 61 P.S. § 315 in 1941 did not preclude the legislature from explicitly repealing the provision in 2009.

Even if 61 P.S. § 315 had never been repealed, the provision prohibits detention where the prisoner is unable to procure a sponsor satisfactory to "the board of inspectors or trustees of the penal institution." Here, it was the Board that rejected the home plans submitted by Nieves, not a body known

extent Nieves would construe 61 P.S. § 315 to require the Board to release him on parole simply because he has served his minimum sentence, 61 P.S. § 315 is inconsistent with the Parole Act. As indicated by the Board, section 35 of the Parole Act repealed statutory provisions that were inconsistent with the Parole Act.[12]

Because we conclude that the Board has no duty to issue a release order for Nieves pursuant to 61 P.S. § 315, we grant summary relief to the Board and deny summary relief to Nieves on this issue.

## II. *Ex Post Facto* Rights

■ Nieves argues that the Board violated his *ex post facto* rights when it modified its parole decision on February 2, 2009, because the modified decision increases the time that he must spend in prison. However, in *Nieves v. Pennsylvania Board of Probation and Parole,* 983 A.2d 236 (Pa.Cmwlth.2009) (*Nieves I* ), this court pointed out that the federal and state constitutions prohibit *ex post facto* laws. The Board's modification of its prior decision is not the enactment of a law.

Because we conclude that the Board's modification of its May 30, 2008, decision does not violate the *ex post facto* rights of Nieves, we grant summary relief to the Board and deny summary relief to Nieves on this issue.

## III. Due Process

■ Nieves argues that the Board violated his substantive due process rights by arbitrarily modifying its parole decision after determining in its May 30, 2008, decision that releasing Nieves on parole would pose no risk to society. However, in *Nieves I,* this court pointed out that a prisoner does not have a protected liberty interest, or due process rights, in parole until the inmate is actually released on parole. Nieves has not yet been released on parole; therefore, at this time, he cannot assert due process rights.

Because we conclude that the Board's modification of its May 30, 2008, decision does not violate the due process rights of Nieves, we grant summary relief to the Board and deny summary relief to Nieves on this issue.

## IV. Megan's Law

■ Nieves argues that the Board's policy restricting where paroled sex offenders may reside is contrary to section 9798 of Megan's Law, which does not restrict where sex offenders or sexually violent predators may reside. Thus, Nieves seeks an order compelling the Board to consider his post-CCC home plan proposals without regard to the proximity to schools, day care centers or playgrounds.

Nieves is correct about the lack of residency restrictions in section 9798 of Megan's Law. However, that silence, by itself, is not sufficient to create a mandatory duty in the Board to impose no residency restrictions on sex offenders or sexually violent predators whose victims have been minors.

### A. Statutory Scheme

The purpose of Megan's Law is to protect people "by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or

---

as "the board of inspectors or trustees of the penal institution."

12. We also note that, under section 1936 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1936, whenever the provisions of two statutes enacted by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail. Thus, to the extent 61 P.S. § 315 cannot be reconciled with the Parole Act, the Parole Act prevails.

near their neighborhood." Section 9791(b) of Megan's Law, 42 Pa.C.S. § 9791(b). A "sexually violent predator" is:

A person who has been convicted of a sexually violent offense [which includes rape] ... and who is determined to be a sexually violent predator ... due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

Section 9792 of Megan's Law, 42 Pa.C.S. § 9792. The Board may request that the State Sexual Offenders Assessment Board perform an assessment of an inmate prior to the Board's parole decision, but the Board has no duty to do so. Section 9795.4(g) of Megan's Law, 42 Pa.C.S. § 9795.4(g). A person convicted of a sexually violent offense who has been determined not to be a "sexually violent predator," is referred to as an "offender" in Megan's Law. 42 Pa.C.S. § 9792.

When the Board grants parole to a sex offender or a sexually violent predator, the Board has a duty to "collect registration information from the offender or sexually violent predator and forward that registration information to the Pennsylvania State Police." Section 9795.2(a)(4)(i) of Megan's Law, 42 Pa.C.S. § 9795.2(a)(4)(i). That information includes the "[a]nticipated future residence" of the parolee. Section 9799.2(2)(iii) of Megan's Law, 42 Pa.C.S. § 9799.2(2)(iii).

The Board also has a duty to inform paroled sex offenders and sexually violent predators of their obligation to register and to provide residence information to the Pennsylvania State Police. Section 9799.2(1) of Megan's Law, 42 Pa.C.S. § 9799.2(1). The Pennsylvania State Police has a duty to notify the chief law enforcement officer of the police department having primary jurisdiction of the municipality in which an offender or sexually violent predator resides.[13] Section 9799.1(4) of Megan's Law, 42 Pa.C.S. § 9799.1(4). The chief law enforcement officer is required to provide written notice of the residence of a sexually violent predator, but not an offender, to: (1) neighbors; (2) the county children and youth service agency; (3) schools in the municipality enrolling students through grade twelve; (4) day care centers or preschool programs in the municipality; and (5) each college, university and community college within 1,000 feet of the residence. Section 9798(b) of Megan's Law, 42 Pa.C.S. § 9798(b).

From this statutory scheme, it is clear that the legislature contemplated the Board's release of sex offenders and sexually violent predators on parole. To assist the Board in determining whether an inmate is likely to engage in predatory sexually violent offenses while on parole, the legislature made available the expertise of the State Sexual Offenders Assessment Board. However, the legislature did not mandate that the Board utilize that resource. The only duties imposed on the Board are the duty to notify the Pennsylvania State Police of a parolee's residence and the duty to inform parolees of their duty to register their residences. The Board has no duty under Megan's Law to approve, without restriction, the location of the residence of a sex offender or sexually violent predator.

**B. Local Ordinances**

One effect of the legislature's decision to omit residency restrictions from Megan's

---

**13.** The Pennsylvania State Police also has a duty to post the residences of offenders and sexually violent predators on the internet. Section 9798.1 of Megan's Law, 42 Pa.C.S. § 9798.1.

Law was the enactment of local ordinances restricting where paroled sex offenders and sexually violent predators could reside, sometimes referred to as NIMBY ("Not in My Backyard") ordinances. In arguing that the Board has a duty under Megan's Law not to restrict the location of the residence of a sex offender or sexually violent predator, Nieves relies on a NIMBY ordinance case, *Fross v. County of Allegheny,* 612 F.Supp.2d 651 (W.D.Pa. 2009). However, *Fross* does not support the position of Nieves.

In *Fross,* the federal district court invalidated an Allegheny County ordinance prohibiting sex offenders from residing within 2,500 feet of a child care facility, community center, public park, recreation facility or school. The court held that the ordinance was in conflict with, and was preempted by, Megan's Law. The court stated:

> The ordinance stands as an obstacle to attaining the objectives of rehabilitating and reintegrating offenders and diverting appropriate offenders from prison by placing strict limits on the areas where they can live. The County's "Restricted Residency" map itself demonstrates the difficulty that an offender would have locating residential housing in a permitted area. The vast majority of the County, and virtually all of the City of Pittsburgh, falls within an area of restricted residency. In addition, there has been no dispute that the named plaintiffs in this case, as well as others pending in this court, have been forced to relocate established residencies under the ordinance. The same pattern will inevitably occur as long as the ordinance is in place. Rehabilitation and reintegration depend on the creation and maintenance of a stable environment and support system, close to family ties, employment, and treatment options. Pushing offenders out of the communities from which they came, and into outlying, unfamiliar suburbs interferes with the state's goals of rehabilitation and reintegration.
>
> Moreover, there has been no dispute that many offenders have been refused release, even though they have been deemed eligible under Pennsylvania's probation and parole system, because housing cannot be located in compliance with the ordinance.

*Id.* at 658–59 (citation omitted). The court ended by stating that the ordinance conflicts with state law by prohibiting that which state law allows, i.e., state law allows even the most egregious offenders to live within 2,500 feet of a school, college or day care center, provided the institutions have notice. *Id.*

However, the court in *Fross* also recognized that, pursuant to parole laws, "[a]ll parolees must obtain approval of the residence to which he will be released from confinement and obtain written permission to make any change in residence. Likewise, the conditions of parole may include residing in an approved residence, and notifying the supervising agent as to any change thereto." *Id.* at 657. The court also recognized that the Board has a policy "to not approve residences for those convicted of sex offenses in which the victim is a minor if they are located within two blocks of a school[,] day care facility, or playground." *Id.* at 659. The court then pointed out that the local ordinance conflicts with the parole laws and the Board's policy. Thus, although the court in *Fross* pointed out that the residency restrictions in the local ordinance may make it difficult to find places for sex offenders and sexually violent predators to reside, the court did not preclude the Board from restricting the location of residences pursuant to its policy.

The court's analysis in *Fross* suggests that the legislature might have chosen to omit residency restrictions from Megan's Law in deference to the Board's power and authority to approve residences for all parolees under 37 Pa.Code § 63.4. However, it is also conceivable that the legislature omitted residency restrictions from Megan's Law because of concerns that such restrictions would be unconstitutional. Indeed, some states enacted versions of Megan's Law that restricted where paroled sex offenders and sexually violent predators may reside, and at least one state supreme court has held that such restrictions are unconstitutional.

### C. Kentucky's Version of Megan's Law

The state of Kentucky enacted a version of Megan's Law that, like the Board's policy, restricted sex offender parolees from residing within 1,000 feet of schools, day care centers or playgrounds. *Commonwealth v. Baker*, 295 S.W.3d 437 (Ky.2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 1738, 176 L.Ed.2d 213 (2010). The Supreme Court of Kentucky held that such residency restrictions violate a parolee's *ex post facto* rights because they increase the parolee's punishment for his criminal acts. *Id.*

In so holding, the court pointed out that: (1) while it is not identical to the traditional practice of banishment as a form of punishment, it prevents the parolee from residing in large areas of a community; (2) because the law applies to every sex offender, it does not consider how dangerous a particular parolee may be to public safety; (3) it poses a constant threat of the parolee's eviction from a residence because there are no guarantees that a school or day care center will open within 1,000 feet

of any given location; and (4) it is irrational because it prohibits parolees from residing (i.e., sleeping at night when no children are present) within 1,000 feet of areas where children congregate, but it does not prohibit parolees from spending all day at a school, day care center or playground when children are present. *Id.*

Here, however, Nieves does not argue that the Board's policy violates his *ex post facto* rights. Even if Nieves had made that argument, we would have disagreed because the federal and state constitutions prohibit *ex post facto* **laws,** and the Board's policy is not a law.[14]

Accordingly, we grant summary relief to the Board and deny summary relief to Nieves on this issue.

### ORDER

AND NOW, this 28th day of April, 2010, it is hereby ordered that the application for summary relief filed by the Pennsylvania Board of Probation and Parole is granted. The application for summary relief filed by Elias Nieves is denied.

### CONCURRING OPINION BY Judge LEAVITT.

I concur in the result reached by the majority. I write separately only to note that it is not necessary for the Court to exhaustively analyze the issues raised by Nieves once it determines he is not entitled to mandamus relief.

It is axiomatic that mandamus will not lie to compel a purely discretionary act, or "to direct the exercise of judgment or discretion in a particular way. . . ." *Coady v. Vaughn*, 564 Pa. 604, 608, 770 A.2d 287, 290 (2001) (quoting *Pennsylvania Dental Association v. Insurance Department*, 512

---

**14.** In order to set forth a proper *ex post facto* claim, Nieves would have to argue successful-

ly that the Board's policy is an unpromulgated regulation with the force and effect of law.

Pa. 217, 228, 516 A.2d 647, 652 (1986)). Nieves asks this Court to compel the Board to exercise its discretion in a particular way by granting him parole. The majority concludes, correctly, that Nieves is not entitled to such relief. I would deny his petition on that basis and omit what is essentially *dicta* regarding the merits of his challenge to the Board's policy restricting the places where paroled sex offenders may reside.