J-S28014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BILLY JO OBRIEN | : | |
| | : | |
| Appellant | : | No. 1709 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 12, 2019
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0000512-2016

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 21, 2020**

Billy Jo Obrien appeals from his September 12, 2019 judgment of sentence of sixty days to two years of incarceration in a state correctional facility, with credit for time served, which was imposed following revocation of his probation for failure to obtain approved housing.  After careful review, we vacate judgment of sentence, reverse the revocation order, and re-impose Appellant's 2016 sentence.

We glean the following from the documentation accompanying the detainer and warrant.  Appellant is a convicted sex offender,[1] but not a sexually violent predator ("SVP"), having been found guilty in 2004 of indecent

---

[1]  Under the former Megan's Law, a person who was convicted of sexually violent offense, but who was not determined to be a sexually violent predator ("SVP"), was referred to as an "offender."  ***See Nieves v. Pa. Bd. of Prob. & Parole***, 995 A.2d 412, 419 (Pa.Cmwlth. 2010).

assault and indecent assault with a person under the age of thirteen. In 2016, Appellant was convicted of failure to register as a sex offender, and sentenced to twenty to forty months of imprisonment followed by two years of probation. By order of February 8, 2017, the court requested that the State Board of Probation and Parole ("State Parole" or "State Board") provide special probation supervision, and that Appellant "comply with all General Conditions of Special Probation as set forth in 37 Pa.Code § 65.4," and the State Board's special conditions for sex offenders, as well as any optional conditions for sex offenders imposed by that Board. Order, 2/8/17, at 1.

Appellant was released from SCI Dallas on May 13, 2019, having served his maximum sentence for failure to register with the Pennsylvania State Police.[2] At that time, he was serving the two-year special probation for that crime under state supervision. He was released to St. Anthony's Catholic Social Services Shelter in Scranton, a homeless shelter. Shortly after he signed in at the shelter, he was detained on a State Parole warrant and transported to the Luzerne County Prison.[3]

_____

[2] Appellant, on May 12, 2005, pled guilty to indecent assault of a person less than 13 years of age (18 Pa.C.S. § 3126(a)(7)), graded as a misdemeanor of the first degree, and indecent assault without the consent of another (18 Pa.C.S. § 3126(a)(1)), graded as a misdemeanor of the second degree. Appellant is a tier 3 sex offender under Megan's Law as a result of those convictions.

[3] The State Board is authorized pursuant to 37 Pa. Code § 65.3, to detain a special probationer in county prison and make a recommendation to the court that may result in probation revocation.

In the comment section of the State Parole transmittal form, it is noted that Appellant "is a transient, homeless sex offender with no current acceptable home plan." Transmittal Letter Special Probation/Parole, 5/14/19, at 1. According to Acting Parole Supervisor David Coslett, under the State Board's policies for sexual offenders, "the offender will not be allowed to reside at a homeless shelter which only operates on a first come, first served basis from 7pm to 7am." Coslett Correspondence, 5/14/19, at 1.[4] Hence, Appellant was detained "for a [*Gagnon I*] Hearing to determine the proper disposition of the offender's case pending home plan approval." *Id*. Mr. Coslett added, "If [Appellant] cannot provide a suitable home plan per Board Policy, the Board would respectfully request the case be remanded back to Luzerne County Adult Probation for supervision." *Id*.

Appellant waived his *Gagnon I* hearing.[5] The first of four *Gagnon II* hearings took place on June 28, 2019. Jeremiah Johnson of State Parole testified that Appellant was currently homeless. Agent Johnson explained that homelessness was not a violation of Appellant's special probation, but that the

---

[4] The Commonwealth did not introduce the Pennsylvania Board of Probation and Parole's Policies and Procedures for Sex Offenders, which allegedly prohibited a sex offender from residing at a first-come, first-served homeless shelter. Nor did the Commonwealth offer proof that Appellant was notified of the restrictions. *Compare Commonwealth v. Elliott*, 50 A.3d 1284 (Pa. 2012) (where, in revocation proceedings, the Commonwealth introduced a document entitled "Standard Special Conditions for Sex Offenders," which was authored by the State Board, initialed and signed by Elliott upon his release, and which was the basis for the alleged violation).

[5] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

State could not effectively supervise Appellant while he was homeless. He reported that Appellant had submitted multiple home plans, but they were unsuitable either because minors lived at the residence, or family members with whom he would be living were being evicted at the time or were convicted sex offenders. Appellant was required to do a daily check-in, and Agent Johnson maintained that the State did not have the ability to monitor Appellant when he was homeless.

The trial court posited that since Appellant did not have a residence, he would be arrested for failure to comply with the registration requirements. Agent Johnson confirmed the court's belief, and stated that the safest course was to put Appellant "before the Court to see what we can do." *Id*. at 3.

Appellant was represented by a Luzerne County assistant public defender. Counsel reported that Appellant had a placement in a thirty-day safe program at the Bishop Jack Wisor Ministries, also known as Just for Jesus in Jefferson County. The court acknowledged that this might be the solution, but continued the hearing and directed the assistant public defender to have its social worker investigate a more viable plan, one that was preferably not limited to thirty days, and that would not require Appellant to relocate to Jefferson County. The court scheduled another hearing for July 29, 2019, and explained to Appellant that all involved were working to find him a satisfactory placement. In the meantime, Appellant remained in the Luzerne County Jail.

On July 29, 2019, Appellant appeared as scheduled before the court. His counsel advised the court that their social worker had secured housing for

Appellant at Just for Jesus, and confirmation of Appellant's acceptance at that facility was provided to the court. N.T., 7/29/19, at 3. Additionally, counsel advised the court that Appellant could extend his stay at the facility beyond the initial thirty days as long as he complied with the facility's rules. *Id*. Counsel also pointed out that Appellant had previously spent a year at the facility in 2013.

State Parole was represented at this hearing by Steven Johnson. He advised the court that the State's home plan investigation had been conducted, but that it was not official yet. He knew, however, that it was being forwarded as a rejection because Appellant did not fall within the terms agreed to by the State Parole and Just for Jesus. *Id*. at 4. Mr. Johnson mentioned that there were currently ten state-supervised sex offenders at that program. He recommended that the court remand Appellant to Luzerne County for supervision so that Appellant's state-supervised parole would not be a roadblock to placement in the Just for Jesus program. *Id*. at 4. The Public Defender's social worker added that she had spoken to Bishop Wisor, and that the State Parole can supervise only a limited number of sex offenders. However, if Appellant was transferred to county supervision, Just for Jesus could accept him at that level. She also mentioned that Appellant had a hearing regarding his eligibility for supplemental security income (SSI) in ninety days, and if approved, he would have the financial resources to find other housing.

The trial court expressed concern with the proposed placement. For example, the court noted that Jefferson County was small, and had only one judge. Since State Parole would have to sign off on the plan, Appellant could be remanded to Luzerne County while awaiting that decision, but that would require a hearing. Finally, the court questioned whether Appellant would have access to children at Just for Jesus as part of the ministry, and asked for more information. The hearing was continued to permit the parties to obtain answers to those questions.

On September 4, 2019, Agent Jeremiah Johnson confirmed that State Parole would not approve Appellant's home plan for Just for Jesus because the number of sex offenders the State supervised at that facility was already at its maximum. Agent Johnson explained, however, that this did not mean that the facility could not house more sexual offenders, but only that State Parole could not supervise any more sex offenders at that facility. *See* N.T., 9/4/19, at 3-4. He clarified that the lack of approval was due to State Parole administrative limitations, and did not mean that Just for Jesus was not a satisfactory facility. *Id*. at 4. Agent Johnson reiterated that if Jefferson County would assume supervision responsibilities, a different agent would be supervising Appellant, and therefore, there would be no additional strain on the state parole agents. *Id*. at 7. Again, Mr. Johnson proposed that Appellant's supervision be remanded to Luzerne County, and transferred to Jefferson County. He represented to the court that Jefferson County had agreed to accept Appellant's supervision.

- 6 -

The court had more questions. It wanted to know how many residents of the facility were currently under the supervision of Jefferson County probation and how many were SVPs. The court also requested that the parties confirm that Jefferson County was willing to accept and supervise Appellant, and ascertain the number of probation officers in Jefferson County. The hearing was continued again.

The hearing resumed on September 12, 2019. The court initially described what it had learned about Just for Jesus, and expressed concern that there were multiple sex offenders at that residence, and that transient homeless persons were using the address. N.T., 9/12/19, at 4. The testifying probation officer did not know how many probation officers there were in Jefferson County, but advised the court that Deputy Chief Tracy Gordon of Jefferson County Adult Probation currently had two offenders reporting to her from Just for Jesus, Appellant would be the third, and that she would accept the case. Deputy Chief Gordon had supervised Appellant there before and "there were no issues at that time." *Id*. at 5.

At this juncture, the trial court stated that Just for Jesus was not a suitable placement. When it was pointed out that Appellant would be unable to obtain his SSI because he was incarcerated and without an address, the trial court opined that if he was successful in his pursuit of SSI, most of it likely would go to Bishop Wisor. *Id*. at 6. The principal problem in the court's view was Jefferson County's lack of resources, in contrast to State Parole,

which "has resources that we do not have." *Id*. at 8. Consequently, the court revoked Appellant's probation, and resentenced him to a state sentence of sixty days to two years of incarceration with credit for time served, which made him immediately parole-eligible. In rejecting a county sentence, the court reasoned that it would then be State Parole's responsibility to find Appellant a safe placement and supervise him. *Id*. at 10.

Appellant filed a motion for modification of his sentence requesting that the court permit him to serve his sentence in Luzerne County, rather than under state supervision, to enable Luzerne County Probation/Parole and the Public Defender's Office to discuss potential housing options and expedite Appellant's release. The motion was denied on September 20, 2019. Appellant filed a timely notice of appeal and both he and the trial court complied with Pa.R.A.P. 1925. Appellant presents two issues for our review:

> 1. Did the trial court err and/or abuse its discretion in revoking the Appellant's probation where the record is devoid of evidence that the Appellant violated a condition of his probation or admitted that he violated a condition of his probation?
>
> 2. Did the trial court err and/or abuse its discretion by imposing a state sentence of total confinement and declining to impose a county sentence?

Appellant's brief at 2.

Appellant contends first that there was no evidence adduced at the *Gagnon II* hearings that he violated a condition of his probation. *See* Appellant's brief at 14. The following principles inform our review:

- 8 -

> Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation. The reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated. A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

*Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa.Super. 2014) (internal citations and quotations omitted).

Once probation has been revoked, a trial court can impose a sentence of total confinement if any of the following conditions exist: "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or, (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. § 9771(c)(1-3); *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa.Super. 2000).

When we review the outcome of a revocation proceeding, we are limited to determining the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1033-34 (Pa.Super. 2013). "In

- 9 -

order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation." ***Commonwealth v. Simmons***, 56 A.3d 1280, 1284 (Pa.Super. 2012). In determining whether the evidence of a probation violation was sufficient, we view the evidence, together with all reasonable inferences, in the light most favorable to the Commonwealth as the verdict winner. ***Id***. at 1285.

Appellant contends that the Commonwealth offered no evidence that an approved home plan was a condition of his probation. Furthermore, his waiver of a ***Gagnon I*** hearing was not an admission that the Commonwealth established by a preponderance of the evidence that Appellant committed a violation of his probation. ***See Commonwealth v. Sims***, 770 A.2d 346, 350 (Pa.Super. 2001) (holding that waiver of a ***Gagnon I*** hearing is merely a concession that there is probable cause to believe a violation has been committed, not an admission). Moreover, Appellant points out that he did not admit to a violation. In sum, Appellant argues that the trial court merely assumed that Appellant would violate the conditions of his probation at some unspecified point in the future and allowed this to serve as sufficient evidence of a violation. ***See*** Appellant's brief at 14-15.

The Commonwealth concedes that State Parole stated at the first ***Gagnon II*** hearing that while homelessness was the basis of the parole revocation, homelessness was "not a violation of [Appellant's] special probation." Commonwealth's brief at 9 (citing N.T., 6/28/19, at 2-3). The

Commonwealth suggests, however, that the trial court "appears to have treated [an] application for a viable home plan as an implied term of probation, in the same manner that maintaining a job would be[,]" and that Appellant "failed to satisfy this requirement over several hearings." Commonwealth's brief at 9.

As our Supreme Court noted in *Commonwealth v. Elliott*, 50 A.3d 1284, 1290 (Pa. 2012), there are conditions of probation in § 9754 and § 9771 of the Sentencing Code, which a trial court imposes. *See* 42 Pa.C.S. §§ 9701, *et seq*. There are also conditions of supervision authorized by the Prisons and Parole Code, and executed by State Parole and its agents. As long as the latter "are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court," they are valid. *Id*. at 1292; *see also* 37 Pa. Code § 67.1(c) (authorizing the revocation of probation upon proof that a probationer violates any condition of supervision). *But see Commonwealth v. Shires*, 2020 PA Super 238 (Pa.Super. Sept. 28, 2020) (holding that probation could not be revoked for violation of conditions of supervision that bore no relation to conditions of probation imposed).

At the *Gagnon II* hearings that took place on four days spread over four months, the Commonwealth did not introduce evidence of the specific conditions of probation or supervision applicable to Appellant, nor did it offer

any proof of a violation thereof.[6] It was the Commonwealth's burden to do so. Furthermore, Agent Jeremiah Johnson stated that Appellant was not in violation of his probation. The ***Gagnon II*** hearings were devoted to exploring whether Just for Jesus was an appropriate placement for Appellant, and whether he should be remanded to county supervision so that he could avail himself of that option.

The Office of the Public Defender and its social worker went to considerable lengths to find a viable placement for Appellant that did not violate any of the conditions governing sex offenders, and which would serve as a residence for purposes of Appellant's registration requirement. They located a placement at Just for Jesus that State Parole representatives acknowledged was not only satisfactory, but equipped to handle Appellant if he was supervised by county probation and parole. As noted above, State Parole supervised other offenders at Just for Jesus, but could not place Appellant there because it was already supervising the maximum number permitted under its own administrative regulations. State Parole representatives testified, however, that by remanding supervision to Luzerne

---

[6] We note there is nothing in the document entitled "Conditions Governing Special Probation/Parole," which was acknowledged by Appellant on April 19, 2017, that expressly identifies an approved home plan as a condition of probation. In correspondence to the court, Acting Parole Supervisor David Coslett referenced State Parole policies and procedures for sex offenders, which prohibit an offender from residing in a first-come, first-served homeless shelter, and/or requiring an offender to "provide a suitable home plan." However, no such policies were introduced at Appellant's ***Gagnon II*** hearings.

County, which in turn would transfer supervision to Jefferson County, Appellant could reside at the Just for Jesus facility. Just for Jesus was willing to take Appellant, and Jefferson County Probation and Parole agreed to supervise him at that facility.

Despite the foregoing, the trial court concluded that Just for Jesus was "just not going to work." N.T., 9/12/19, at 4. Ignoring assurances from both Agent Jeremiah Johnson and Mr. Steven Johnson that State Parole would have no problem with Just for Jesus, the court persisted in the belief that State Parole would not agree to the placement. *Id*. at 5. The court expressed fear that if Appellant successfully obtained SSI benefits while residing there, "the bulk of it would go to the [B]ishop," despite no evidence of same. *Id*. at 6. It was concerned that "there's all these sexual offenders living in one house" and furthermore, "it's a farmhouse in the middle of the woods." *Id*. The court maintained that there were places approved for supervision by State Parole and that the state had access to resources that the county did not have. *Id*. at 8. It also conveyed reluctance to ask another county to take care of Appellant's supervision. *Id*. at 9. Accordingly, the court revoked Appellant's probation and resentenced him to a state sentence of imprisonment, reasoning "then the state has to find where he's paroled to. They have resources all around the state. They are the ones who would have the better capability to supervise and get him somewhere safe." *Id*.

In its Rule 1925(a) opinion, the court justified revocation based on Appellant's failure "to have a residence to check in for compliance with the registration requirements of his sentence, and residence at a 7:00 p.m. to 7:00 a.m., first-come, first-served homeless shelter did not qualify." Trial Court Opinion, 12/20/19, at 6. In sentencing Appellant to the minimum state sentence of sixty days to two years in prison, the court expressed its intent to put the onus on State Parole, with its superior resources, to find a suitable placement for Appellant when he was eventually released.

Viewing the evidence and inferences in the light most favorable to the Commonwealth, we must agree with Appellant that the Commonwealth failed to prove a probation violation by a preponderance of the evidence. There was no evidence adduced that a home plan was a condition of Appellant's probation, and the trial court did not find that such a plan was an implied condition. Furthermore, it did not introduce evidence of a State Parole policy requiring a home plan or prohibiting Appellant from checking into a first-come, first-served, homeless shelter. Most importantly, the Commonwealth proffered evidence that homelessness was not a violation of Appellant's probation. *See* N.T., 6/28/19, at 2. It appears that the State Parole warrant and detention were pre-emptive: to place Appellant before the court so that a suitable placement could be found before he failed to register and was arrested. In short, the evidence adduced at Appellant's *Gagnon II* hearings

was insufficient to establish that Appellant violated any condition of his probation or supervision.

Furthermore, even if we were to assume that an approved home plan was either an express or implied condition of Appellant's probation, we would find that Appellant complied with that condition. Just for Jesus agreed to accept Appellant for as long as he complied with the rules. State Parole represented that it would approve the placement under the auspices of Jefferson County, and that the facility complied with State Parole policies. Jefferson County Probation agreed to undertake supervision of Appellant while he was at the facility. The trial court's reasons for finding the home plan unacceptable were based on conjecture and a reluctance to assume county supervision.

It is apparent that suitable housing is scarce for sex offenders who, for any number of reasons, cannot reside with family. Despite the trial court's insistence that the State has greater resources than the counties, as Appellant correctly points out, State Parole had already demonstrated that it lacked the resources to place him in an acceptable facility. While the court's reluctance to send Appellant across the state to a rural residence housing other sex offenders was perhaps well-intentioned, the fact remains that Just for Jesus was approved by both the State and the County for the housing of sexual offenders. Appellant had previously resided there and, according to reports, did well. Jefferson County Probation had supervised Appellant at that time,

- 15 -

and agreed to assume that responsibility again. The alternative chosen by the court was a pre-emptive probation revocation and re-imprisonment in a state correctional facility. Appellant expressed his fear that after serving his maximum sentence in state prison, he will again have no place to go upon release, thus perpetuating the cycle. His fear is not unfounded.

We are mindful that "[t]he aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen." **Commonwealth v. Chambers**, 55 A.3d 1208, 1212 (Pa.Super. 2012). To that end, probation and parole officers' supervision duties include rendering assistance to offenders to maximize their successful completion of probation and parole so as to promote successful re-entry into society. **Commonwealth v. Parker**, 152 A.3d 309, 316 (Pa.Super. 2016). Cooperation among State Parole, county probation, and the courts is required to ensure that limited resources are best utilized to secure suitable housing, services, and supervision for offenders, and advance that goal.

Judgment of sentence vacated. September 12, 2019 revocation order reversed. November 9, 2016 sentence re-imposed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2020

- 16 -